IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| BYRON ORRICK OUTLAW, § <br> TDCJ No. 01500002, § <br> § <br> Petitioner, § <br> § <br> v. § <br> § <br> BOBBY LUMPKIN, Director, § <br> Texas Department of Criminal Justice, § <br> Correctional Institutions Division, § <br> § <br> Respondent. § | Civil Action No. 7:20-cv-00106-O-BP |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Byron Outlaw's pro se Petition for a Writ of Habeas Corpus ("Petition") (ECF No. 1) and Motion for Leave to Amend and Supplement ("Motion for Leave") (ECF No. 16). After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **DENY** the Motion for Leave and **DISMISS** the Petition **with prejudice** as time barred.

### I.    BACKGROUND

Byron Outlaw is serving a life sentence in the Allred Unit of the Texas Department of Criminal Justice following his 2006 conviction for the murder of Ervin Flint. ECF Nos. 1 at 1; 11-3 at 68–70 ("Judgment of Conviction by Jury"); *see also Outlaw v. State*, No. 2-06-447-CR, 2008 WL 3877217 (Tex. App.—Fort Worth 2008, pet. ref'd) (per curiam) (affirming Outlaw's conviction). Eleven years later, an adverse witness from the murder trial, Clifton Wiley, signed an affidavit recanting his testimony and exculpating Outlaw ("Recanting Affidavit"). ECF No. 11-24 at 11–13. Outlaw relied on the Recanting Affidavit in petitioning the Texas Court of Criminal Appeals for a writ of habeas corpus (ECF No. 11-15 at 4, 13–14), but the court dismissed his

petition, concluding that Outlaw abused the writ by knowingly submitting false evidence. *Ex parte Outlaw*, No. WR-89,547-01, 2020 WL 470275 (Tex. Crim. App. Jan. 29, 2020) (per curiam).

Outlaw then filed the instant Petition under 28 U.S.C. § 2254, moving on five separate grounds and requesting an evidentiary hearing under § 2254(e)(2). ECF No. 1 at 1, 6–17. Respondent asserts the applicable one-year statute of limitations. ECF No. 12. Outlaw responds that the actual-innocence gateway exception preserves his Petition's timeliness. ECF No. 15 at 5. The record and the law do not support Outlaw's Petition.

## II.    LEGAL STANDARD AND ANALYSIS

### A.    The Petition is time barred.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2244(d), imposes a one-year statute of limitations for state prisoners to apply for a writ of habeas corpus. Subsection 2244(d)(1)(D), upon which Outlaw "fully relies" to preserve his claim (ECF No. 15 at 4), measures the limitations period from "the date on which the *factual predicate* of the claim or claims presented could have been discovered through the exercise of due diligence." § 2244(d)(1)(D) (emphasis added). The factual-predicate date is when petitioner has notice of facts supporting his claim, not when he possesses evidence of those facts. *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015).

For his factual predicate, Outlaw submits the Recanting Affidavit that allegedly "fully exonerates" Outlaw. ECF No. 15 at 5. When, as here, a petitioner's factual predicate rests on an affidavit, the reviewing court must consider whether the AEDPA's limitations period began running on that affidavit's execution date. *See, e.g.*, *Chism v. Johnson*, No. 3:99-cv-2412-BD, 2000 WL 256875, at *2 (N.D. Tex. Mar. 7, 2000) (concluding it did not); *Hammack v. Quarterman*, No. 4:06-cv-111-A, 2006 WL 1831329, at *3 (N.D. Tex. June 30, 2006) (same); *Daniels v. Uchtman*,

421 F.3d 490, 492 (7th Cir. 2005) (concluding it did). Here, the undersigned follows the decisions reached previously by the Court, concludes that it did not, and accordingly finds the Petition time barred.

The Recanting Affidavit states that Outlaw was out of town during the murder and that "Byron [Outlaw] was not with me at all when I shot the house on Eastside and killed Ervin Flint." ECF No. 11-24 at 12–13. This confession contradicts his trial testimony, in which Wiley described driving Outlaw away from the crime scene after Outlaw effectively admitted (by not denying) firing the gunshots that killed Flint:

> [A]fter all the gunshots stop, I raise up and I looked around. I didn't see nobody. I started -- I put my car back in drive, and as I'm pulling out, when *Outlaw* came, I opened up my passenger door. He sat down, breathing hard. He said, [']Bro, just drop me off at Mama house.['] *Right then I asked him*, [']Was that just *you* or was that the [other people]? You know what I'm saying?['] *He said*, [']Well, just drop me off at Mama house.['] So I pulled around to Miss Lewis' house. He got out of my car, got in his car, and pulled off.

ECF No. 11-5 at 30 (emphasis added). If the Recanting Affidavit is true, then Outlaw knew during trial that Wiley lied, not suddenly eleven years later when Wiley drafted the Recanting Affidavit. *See In re Young*, 789 F.3d at 528. Outlaw has personal knowledge of the facts to which Wiley testified, including whether the two rode away from the crime scene together. That knowledge extends to whether he dodged Wiley's question suggesting he fired the deadly gunshots, noting that failure to deny an accusatory statement is often probative of guilt. *See* Fed. R. Evid. 801(d)(2)(B).

Comparing the Recanting Affidavit with trial testimony thus reveals that Outlaw's factual predicate (if any) existed when Wiley testified in 2006. Outlaw gives no reason justifying the decade-exceeding delay between then and his Petition's filing. *See* 28 U.S.C. § 2244(d)(1)(D) (requiring petitioners to exercise due diligence in discovering the factual predicate). To the contrary, Outlaw concedes his application is time barred but for his actual-innocence argument.

ECF No. 15 at 4. The Court agrees that his Petition is barred unless that argument prevails, because more than one year passed between when he had notice of the facts allegedly supporting his claim and when he filed the Petition.

### B.    Outlaw does not establish actual innocence.

Petitioners may present otherwise time barred applications if they prove "actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). This means the petitioner is factually innocent, not merely that there is a legal insufficiency of his guilt. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioners prove actual innocence by revealing new, vindicating evidence, like "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The Court must find that "in light of the new evidence, no juror, acting reasonably, would have voted to find [the defendant] guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*). This fact-intensive inquiry involves the Court assessing how reasonable jurors would weigh Petitioner's new evidence given the entire record. *Schlup*, 513 U.S. at 329–32. Petitioner's burden is demanding, as meritorious actual-innocence cases are rare. *McQuiggin*, 569 U.S. at 386, 401.

Executed eleven years after trial, the Recanting Affidavit warrants "extreme suspicion." *Summers v. Dretke*, 431 F.3d 861, 872 (5th Cir. 2005); *see also Herrera v. Collins*, 506 U.S. 390, 417–19 (1993) (disfavoring delayed affidavits). Within three weeks of the Recanting Affidavit's existence, Wiley withdrew it by signing another affidavit explaining that the former one was actually "false" and that his trial testimony remained the "honest truth." ECF No. 11-24 at 14–15. Wiley later testified before the state habeas court that the Recanting Affidavit was a "boldfaced lie" (ECF No. 11-22 at 129), and the court concluded that it was untruthful. *Ex parte Outlaw*, 2020 WL 470275. The undersigned Court sees no reason to disagree with the state court's conclusion.

*See Summers*, 431 F.3d at 871–72 ("[W]here, as here, the state habeas court has made a credibility determination, that finding is also afforded deference under AEDPA.").

Moreover, the Recanting Affidavit is not the new evidence *Schlup* envisions. *See Lomax v. Dir., TDCJ-CID*, No. 6:18-cv-583, 2020 WL 6298105, at *6 (E.D. Tex. Aug. 24, 2020), *rec. adopted*, 2020 WL 6290149 (E.D. Tex. Oct. 27, 2020). It alludes to Wiley's own indictment for murdering Ervin Flint. *See* ECF No. 11-7 at 106. Wiley then explains lying at trial about Outlaw's culpability "to have a better chance of getting less time" because he was "desperate to come home to [his] five children." ECF No. 11-24 at 13. But the jury knew of Wiley's motives to lie and incriminate Outlaw when it heard his testimony in 2006, yet nonetheless convicted Outlaw. The Court is unconvinced that any reasonable juror would weigh Wiley's credibility differently today upon seeing the same motives rehashed in the Recanting Affidavit. *See Schlup*, 513 U.S. at 329 (defining reasonable jurors).

Wiley was subject to cross-examination at the 2006 trial, during which Outlaw's counsel made sure to apprise the jury of the indictment. ECF No. 11-5 at 34. Counsel then successfully offered into evidence several handwritten letters from Wiley to the state district attorney before the trial (ECF No. 11-5 at 35–37), which all displayed Wiley's overeagerness to testify against Outlaw in exchange for a reduced sentence:

> I'm willing to testif[y] ag[ainst] Byron Orrick Outlaw in this murder case . . . I just want to go home to my wife and four kids sir . . . I'm willing and will plea barg[a]in with you . . . I'm [r]eady to testify[.] I need to get to my wife and five children sir[.] Just tell me who and what you want . . . I will write a statement, tape recorded statemen[t,] and testify if that's what it takes sir[.] I don[']t want to go back to a locked up facility because I have a wife and five kids who need me very much sir.

ECF No. 11-7 at 100–01, 103. Counsel capped his impeachment in closing argument, asserting that "Mr. Wiley is guilty of murder" and has at least "five good reasons for making up a story." ECF No. 11-6 at 12–13; *see In re Young*, 789 F.3d at 529 (considering new evidence in light of

impeachment evidence heard at trial). Even so, the jury still found Outlaw guilty beyond a reasonable doubt. ECF No. 11-6 at 43. The state appellate court affirmed the conviction, analyzing the various evidentiary sources against him. *Outlaw*, 2008 WL 3877217, at *2–4.

Outlaw has not made the demanding showing needed for the Court to conclude that no reasonable juror would convict him considering the Recanting Affidavit. Thus, his Petition remains time barred, and the Court need not assess its merits or otherwise recommend an evidentiary hearing. *See McQuiggin*, 569 U.S. at 386.

### C. Petitioner's Motion for Leave should be denied.

Having so concluded, the Court recommends denying Outlaw's Motion for Leave, which claims there is more "newly available evidence" that bolsters the Recanting Affidavit and warrants leave of court so Outlaw can conduct discovery and supplement his argument. ECF No. 16 at 1. At the outset, the Court notes that this evidence is not new. It is the final compensation motion of Wiley's appointed attorney from Outlaw's state habeas proceedings. ECF No. 11-20 at 312–13. The attorney filed the motion with the state habeas court in September 2019, more than a year and a half before this Motion for Leave. *Id.* The compensation motion documents the attorney's work on Wiley's behalf during those proceedings, including that the attorney "[p]rinted and reviewed email from Tony Bates with Affidavit." *Id.* at 312. Outlaw alleges, and the Respondent does not dispute, that Tony Bates worked in the state district attorney's office. ECF Nos. 16 at 4–5; 20 at 1–18. Outlaw wants to subpoena the email, theorizing it will reveal collusion between Wiley's appointed attorney and the district attorney's office, which resulted in Wiley withdrawing the Recanting Affidavit. ECF No. 16 at 4–5.

But this theory is unavailing. Federal habeas courts may only authorize a party to conduct discovery for "good cause." RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES

DISTRICT COURTS, R. 6(a); *see also Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) (defining "good cause"). As mentioned, Outlaw's counsel already directed the state habeas court's attention to the compensation motion. ECF No. 11-20 at 312–13. In a 2019 court filing, his counsel cited the same motion in bold ink on the first page. ECF No. 11-20 at 316. Counsel similarly argued then, as Outlaw does now, that Wiley withdrew the Recanting Affidavit under "inherently intimidating circumstances" surrounding communications between Wiley, his appointed attorney, and the district attorney's office. *Id.* In 2020, the Texas Court of Criminal Appeals dismissed Outlaw's state habeas application. *Ex parte Outlaw*, 2020 WL 470275. In reaching that conclusion, the court necessarily considered counsel's argument in light of the compensation motion and as these both relate to the Recanting Affidavit's credibility. However, the court was unpersuaded. *See id.* The Court again defers to that finding. *See Summers*, 431 F.3d at 871–72.

The AEDPA does not entitle petitioners to an "extended delay" while they gather "every possible scrap of evidence" that might support their claim. *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998). Petitioner does not show good cause in his Motion for Leave, which should be denied, and the Court's conclusion that the Petition is time barred remains unchanged.

Because Outlaw's Petition is time barred and he has failed to make a sufficient showing of actual innocence, the undersigned **RECOMMENDS** that Judge O'Connor **DENY** his Motion for Leave and **DISMISS** his Petition **with prejudice** as time barred.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state

the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

      **SIGNED** on August 31, 2021.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE